**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| **ALBERT MARCELLUS BRISCOE** | : |
| **6516 ELMHURST STREET** | : |
| **DISTRICT HEIGHTS, MARYLAND 20747** | : |
| | : |
| **and** | : |
| | : |
| **MERLE WATSON** | : |
| **2807 KIRKLAND AVENUE** | : **Civil Action Number: _____** |
| **DISTRICT HEIGHTS, MARYLAND 20747** | : |
| | : |
| **and** | : |
| | : |
| **DONALD DUREN** | : |
| **3464 BRINKELY ROAD** | : |
| **APARTMENT 103** | : |
| **TEMPLE HILLS, MARYLAND 20747** | : |
| | : |
| **Plaintiffs** | : |
| | : |
| **v.** | : |
| | : |
| **THE UNITED STATES OF AMERICA** | : |
| | : |
| **SERVE: THE OFFICE OF THE UNITED** | : |
| **STATES ATTORNEY FOR THE DISTRICT** | : |
| **OF COLUMBIA** | : |
| **555 4th STREET, NW** | : |
| **WASHINGTON, D.C. 20530** | : |
| | : |
| **and** | : |
| | : |
| **FEDERAL BUREAU OF INVESTIGATION** | : |
| **935 PENNSYLVANIA AVENUE, N.W.** | : |
| **WASHINGTON, D.C. 20535** | : |
| | : |
| **and** | : |
| | : |
| **JAMES COMEY, DIRECTOR** | : |
| **FEDERAL BUREAU OF INVESTIGATION** | : |
| **935 PENNSYLVANIA AVENUE, N.W.** | : |
| **WASHINGTON, D.C. 20535** | : |
| | : |
| | : |

SERVE:                                          :
**JAMES COMEY, DIRECTOR**                       :
**FEDERAL BUREAU OF INVESTIGATION**             :
**935 PENNSYLVANIA AVENUE, N.W.**               :
**WASHINGTON, D.C. 20535**                      :
                                                :
            **and**                             :
                                                :
**UNITED STATES DEPARTMENT OF**                 :
**JUSTICE**                                     :
**935 PENNSYLVANIA AVENUE, N.W.**               :
**WASHINGTON, D.C. 20535**                      :
                                                :
            **and**                             :
                                                :
**MATTHEW LOWRY**                               :
**FEDERAL REGULATION NUMBER**                   :
**33564-016**                                   :
**FCI PEKIN**                                   :
**FEDERAL CORRECTIONAL INSTITUTION**            :
**P.O. BOX 5000**                               :
**PEKIN, ILLINOIS  61555**                      :
                                                :
            **Defendants.**                     :
=====================================

## **COMPLAINT**

Plaintiffs, ALBERT BRISCOE, MERLE WATSON, AND DONALD DUREN, by and

through undersigned counsel, Billy L. Ponds, of The Ponds Law Firm, respectfully submit this

Complaint against the UNITED STATES, DEPARTMENT OF JUSTICE, FEDERAL BUREAU

OF  INVESTIGATION,  JAMES  COMEY,  DIRECTOR,  FEDERAL  BUREAU  OF

INVESTIGATION AND MATTHEW LOWRY. In support of this Complaint, the plaintiffs allege

as follows:

## **JURISDICTION**

1.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C.

§1346(b), which gives district courts' jurisdiction over all civil actions arising from the negligent

or wrongful acts or omissions of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the places where the act or omission occurred.

2.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §2680(h), which gives District Courts jurisdiction over (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided,* that, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising… out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.

3.      Each plaintiff has exhausted all administrative remedies. An administrative claim was filed on behalf of each plaintiff on April 27, 2015, with the Federal Bureau of Investigation (FBI). On October 30, 2015, each claim was rejected by the FBI. Each Plaintiff has six (6) months from October 30, 2015, to file a cause of action.

4.      The plaintiffs bring this timely action to redress violations of their constitutional rights pursuant to the Fourth, Fifth, and Sixth Amendments as more fully set forth herein.

5.      All of the acts complained of herein occurred in the District of Columbia.

6.      The plaintiffs submit that this Court has jurisdiction over all claims for relief cited herein.

7.      Venue is proper in this Court as set forth herein.

**PARTIES**

8.      Plaintiff, Albert Briscoe, is a natural person, a citizen of the United States and a resident of the state of Maryland.

9.      Plaintiff, Merle Watson, is a natural person, a citizen of the United States and a resident of the state of Maryland.

10.     Plaintiff, Donald Duren, is a natural person, a citizen of the United States and a resident of the state of Maryland.

11.     Defendant, the United States, is being sued pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) for negligence, negligent supervision, and pursuant to 28 U.S.C. § 2680(h) false imprisonment. The plaintiffs have also asserted claims of negligent infliction of emotional distress against all defendants.

12.     Defendant, the Federal Bureau of Investigation, is a federal law enforcement agency that is being sued in its official capacity for its negligence, negligent supervision, and the torts committed by its agents.

13.     Defendant, FBI Director James Comey, is the head of the Federal Bureau of Investigation, a federal law enforcement agency, and is being sued in his official capacity for negligence, negligent supervision, and the torts committed by his agents.

14.     Defendants United States of America and the Department of Justice are responsible for the operation of the Federal Bureau of Investigation.

15.     At all relevant times herein, defendant Matthew Lowry ("Lowry") was a Federal Bureau of Investigation Agent.

16.     At all relevant times herein, Lowry was a law enforcement officer employed by the United States government and assigned to the United States Department of Justice, Federal Bureau

of Investigation in the Washington, D.C. metropolitan area, where he held the position of Special Agent.

17.    At all relevant times herein, Lowry was acting under the color of his authority with as a Special Agent of the Federal Bureau of Investigation, within the scope of his employment and is being sued in his official and individual capacity.

## FACTS

### Albert Briscoe

18.    On December 13, 2012, a United States District Court for the District of Columbia grand jury returned an indictment against Albert Briscoe and nine (9) co-defendants, which alleged their participation in a conspiracy to distribute and possession with the intent to distribute one kilogram or more of heroin, in the District of Columbia, Maryland, Virginia and New York from July of 2012 to December 11, 2012.

19.    On December 18, 2012, Albert Briscoe was arrested and charged in United States District Court for the District of Columbia with unlawful distribution of heroin in violation of 21 U.S.C. §841(a)(1) and §841(b)(1)(C), unlawful possession with the intent to distribute heroin violation of 21 U.S.C. §841(a)(1) and §841(b)(1)(C), conspiracy to distribute and possession with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. 21 U.S.C. §846 in case number 12-CR-271. The charges against Albert Briscoe also included a criminal forfeiture count pursuant to 21 U.S.C. §853.

20.    On December 18, 2012, Albert Briscoe was preventively detained pending trial.

21.    As a result of the charges filed against Albert Briscoe, the maximum penalty for the offenses with which he was charged was a term of imprisonment of not less than five (5) years and up to forty (40) years, a fine not to exceed five million ($5,000,000.00) dollars, a term of

supervised release of at least four (4) years and up to life, after any period of incarceration and a special assessment in the amount of one hundred ($100.00) dollars.

22. On June 12, 2013, based on the tampered or fraudulent evidence against him, Albert Briscoe waived his right to trial by jury. Albert Briscoe waived his right to a jury trial based on the belief that the evidence against him was not fraudulent.

23. On June 12, 2013, Albert Briscoe entered a guilty plea to conspiracy to distribute and possession with the intent to distribute one hundred (100) grams or more of heroin and forfeited eight thousand ($8,000.00) dollars, which the government alleged was proceeds of crime and that Albert Briscoe was jointly and severally liable with the co-defendants for the proceeds. This plea was entered upon information and belief that the evidence against him was not fraudulent.

24. Albert Briscoe pled guilty due to his fear that if he was convicted he would be sentenced to a substantial period of incarceration.

25. Due to that fear, Albert Briscoe accepted a plea which reduced his exposure to a substantial period of incarceration and involved a lesser term of imprisonment.

26. On August 22, 2013, the Honorable James E. Boasberg sentenced Albert Briscoe to a term of imprisonment of twenty-seven (27) months.

27. On August 22, 2013, the Honorable James E. Boasberg placed Albert Briscoe on supervised release for a period of forty-eight (48) months.

28. On August 22, 2013, Albert Briscoe was obligated to pay an assessment in the amount of one hundred ($100.00) dollars.

29. On August 22, 2013, Albert Briscoe forfeited his interest in the aforementioned alleged proceeds of criminal activity totaling eight thousand ($8,000.00) dollars.

30.     Albert Briscoe was remanded to the custody of the Federal Bureau of Prisons and served his sentence at Federal Correction Institution-Fort Dix in Joint Base Middle, New Jersey.

31.     On October 27, 2014, Albert Briscoe was released from custody of the Federal Bureau of Prisons.

32.     On November 6, 2014, as a result of Lowry's misconduct, Judge Boasberg entered an order which vacated Albert Briscoe's conviction.

33.     On November 6, 2014, as a result of Lowry's misconduct, Judge Boasberg dismissed the indictment filed against Albert Briscoe.

34.     In addition to being wrongfully incarcerated for approximately twenty two (22) months, Albert Briscoe's health significantly deteriorated while he was incarcerated.

35.     As a result of his incarceration, Albert Briscoe acquired a severe infection for which he was prescribed numerous medications.

36.     The infection described above has only very recently began to dissipate.

37.     As a result of his incarceration, Albert Briscoe began to suffer from severe depression.

38.     As a result of his incarceration, Albert Briscoe was unable to care for his sister who has severe asthma.

39.     Albert Briscoe's severe depression was in part a result of his inability to care for his asthmatic sister while he was incarcerated.

40.     Prior to his incarceration, Albert Briscoe was gainfully employed with the Greater Washington Urban League/Seabury, Inc.

41.     Prior to his incarceration, Albert Briscoe had worked for the Greater Washington Urban League/Seabury, Inc. for seventeen (17) years.

42. As a result of his incarceration, Albert Briscoe's employment with the above-noted company was terminated.

## FACTS

### Merle Watson

43. On December 13, 2012, a United States District Court for the District of Columbia grand jury returned an indictment against Merle Watson and nine (9) co-defendants, which alleged their participation in a conspiracy to distribute and possession with the intent to distribute one kilogram or more of heroin, in the District of Columbia, Maryland, Virginia and New York from July of 2012 to December 11, 2012.

44. On December 18, 2012, Merle Watson was arrested and charged in United States District Court for the District of Columbia with unlawful distribution of heroin in violation of 21 U.S.C. §841(a)(1) and §841(b)(1)(C), unlawful possession with the intent to distribute heroin violation of 21 U.S.C. §841(a)(1) and §841(b)(1)(C), conspiracy to distribute and possession with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. 21 U.S.C. §846 in case number 12-CR-271. The charges against Merle Watson also included a criminal forfeiture count pursuant to 21 U.S.C. §853.

45. On December 18, 2012, Merle Watson was preventively detained pending trial.

46. As a result of the charges filed against Merle Watson, the maximum penalty for the offenses with which he was charged was a term of imprisonment of not less than five (5) years and up to forty (40) years, a fine not to exceed five million ($5,000,000.00) dollars, a term of supervised release of at least four (4) years and up to life, after any period of incarceration and a special assessment in the amount of one hundred ($100.00) dollars.

47.     On May 31, 2013, based on the tampered or fraudulent evidence against him, Merle Watson waived his right to trial by jury. Merle Watson waived his right to a jury trial based on the belief that the evidence against him was not fraudulent.

48.     On May 31, 2013, based on the tampered or fraudulent evidence against him, Merle Watson entered a guilty plea to conspiracy to distribute and possession with the intent to distribute one hundred (100) grams or more of heroin and forfeited eight thousand ($8,000.00) dollars, which the government alleged was proceeds of crime and that Mr. Watson was jointly and severally liable with the co-defendants for the proceeds. This plea was entered upon information and belief that the evidence against him was not fraudulent.

49.     Merle Watson pled guilty due to his fear that if he was convicted he would be sentenced to a substantial period of incarceration.

50.     Due to that fear, Merle Watson accepted a plea which reduced his exposure to a substantial period of incarceration and involved a lesser term of imprisonment.

51.     On August 21, 2013, the Honorable James E. Boasberg sentenced Merle Watson to a term of imprisonment of forty-eight (48) months.

52.     On August 21, 2013, the Honorable James E. Boasberg placed Merle Watson on supervised release for a period of sixty (60) months.

53.     On August 21, 2013, Merle Watson was obligated to pay an assessment in the amount of one hundred ($100.00) dollars.

54.     On August 21, 2013, Merle Watson forfeited his interest in the aforementioned alleged proceeds of criminal activity totaling eight thousand ($8,000.00) dollars.

55.     Merle Watson was remanded to the custody of the Federal Bureau of Prisons and he served his sentence at Rivers Correctional Institution in Winton, North Carolina.

56.     On October 27, 2014, Merle Watson was released from custody of the Federal Bureau of Prisons.

57.     On November 6, 2014, as a result of Lowry's misconduct, Judge Boasberg entered an order which vacated Merle Watson's conviction.

58.     On November 6, 2014, as a result of Lowry's misconduct, Judge Boasberg dismissed the indictment filed against Merle Watson.

59.     In addition to being wrongfully incarcerated for approximately twenty two (22) months, Merle Watson's health significantly deteriorated while he was incarcerated.

60.     As a result of his incarceration, Merle Watson began to suffer from extreme stress, hypertension and high blood pressure. Merle Watson sought treatment for all of these conditions.

61.     In March of 2011, Merle Watson underwent spinal and lumbar surgery.

62.     During the entire time that Merle Watson was incarcerated, he received little to no treatment for the medical issues with his back.

63.     Any medication administered to Merle Watson during his incarceration consisted solely of over-the-counter medication, which did not alleviate the pain associated with his prior spinal and lumbar surgery.

64.     Throughout Merle Watson's incarceration, he endured excruciating back pain due to a lack of therapy treatment and inappropriate bedding for his condition.

65.     In addition to his health deteriorating health, Merle Watson was unable to care for his sister, Margaret Watson.

66.     Prior to his incarceration, Merle Watson was the legal caretaker of Margaret Watson.

67. Margaret Watson suffered from advanced Parkinson's disease, and needs constant care and supervision.

68. As a result of Margaret Watson's advanced Parkinson's disease, she is not able to manage most daily activities on her own, and she depended on Merle Watson to assist her with her day to day activities.

69. As a result of Merle Watson's incarceration, Margaret Watson's condition significantly deteriorated.

70. Margaret Watson suffered two mild strokes and was hospitalized multiple times.

71. Margaret Watson also was diagnosed with stress, anxiety, and severe tension disorders.

72. Prior to Merle Watson's incarceration, he was the primary caretaker of his wife, Annette Watson.

73. Annette Watson is confined to a wheelchair and has suffered from cardio-malfunctions of her heart.

74. As a result of her condition, Annette Watson is completely immobile and relies on others for her day to day care.

75. As a result of Merle Watson's incarceration, he was unable to care for Annette Watson and her condition progressively deteriorated.

76. Merle Watson's inability to care for both Annette and Margaret Watson during his incarceration caused him an insurmountable amount of emotional distress and anxiety.

77. Merle Watson's stress and anxiety resulted from his incarceration, which impeded his ability to ensure Margaret and Annette Watson received the care that they needed.

78.     Merle Watson sought treatment for the severe stress and anxiety and was prescribed medication.

79.     Merle Watson's incarceration also caused him to miss several family events, including but not limited to, his two granddaughters' high school graduation and his father's funeral.

## FACTS

### Donald Duren

80.     On December 11, 2012, Donald Duren was arrested and charged by complaint in United States District Court for the District of Columbia with conspiracy to distribute and possession with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. 21 U.S.C. §846 in case number 12-mj-00982-JMF.

81.     On December 17, 2012, Donald Duren was preventively detained pending trial.

82.     On December 13, 2012, a United States District Court for the District of Columbia grand jury returned an indictment against Donald Duren and five (5) co-defendants. Donald Duren was charged in case number with 12-CR-270-JEB.

83.     As a result of the charges filed against Donald Duren, the maximum term of imprisonment for the offenses with which he was charged was a term of imprisonment of up to twenty (20) years, a fine not to exceed one million ($1,000,000.00) dollars, a term of supervised release of at least three (3) years and up to life, after any period of incarceration and a special assessment of one hundred ($100.00) dollars.

84.     On September 10, 2013, based on the tampered or fraudulent evidence against him, Donald Duren waived his right to trial by jury. This right was waived upon information and belief that the evidence against him was not fraudulent.

85.     On September 10, 2013, based on the tampered or fraudulent evidence against him, Donald Duren entered a guilty plea to conspiracy to distribute and possession with the intent to distribute a mixture and substance containing a detectable amount of heroin. This plea was entered upon information and belief that the evidence against him was not fraudulent.

86.     Donald Duren pled guilty due to his fear that if he was convicted he would be sentenced to a substantial period of incarceration.

87.     Due to that fear, Donald Duren accepted a plea which reduced his exposure to a substantial period of incarceration and involved a lesser term of imprisonment.

88.     On November 26, 2013, the Honorable James E. Boasberg sentenced Donald Duren to a term of imprisonment of forty-one (41) months.

89.     On November 26, 2013, the Honorable James E. Boasberg placed Donald Duren on supervised release for a period of thirty-six (36) months.

90.     On November 26, 2013, Donald Duren was obligated to pay an assessment in the amount of one hundred ($100) dollars.

91.     On November 26, 2013 Donald Duren forfeited his interest in the aforementioned alleged proceeds of criminal activity totaling six thousand eight hundred ($6,800.00) dollars.

92.     Donald Duren was remanded to the custody of the Federal Bureau of Prisons and he served his sentence at Rivers Correctional Institution in Winton, North Carolina.

93.     On October 27, 2014, Donald Duren was released from custody of the Federal Bureau of Prisons.

94.     On November 6, 2014, as a result of Lowry's misconduct, Judge Boasberg entered and order which vacated Donald Duren's conviction.

95.     On November 6, 2014, as a result of Lowry's misconduct, Judge Boasberg dismissed the indictment filed against Donald Duren.

96.     In addition to being wrongfully incarcerated for approximately twenty two (22) months, Donald Duren's health significantly deteriorated while he was incarcerated.

97.     As a result of his incarceration, Donald Duren missed many important family events, including but not limited to, the death of his father, who died two months after his arrest.

## FACTS COMMON TO ALL PLAINTIFFS

### Agent Lowry's Misconduct

98.     On October 1, 2014, the government was informed by the Federal Bureau of Investigation that one of the special agents, Lowry, who assisted in the investigation of Briscoe, Watson and Duren's case, may have engaged in misconduct by tampering with evidence, including narcotics evidence seized during his investigations.

99.     Lowry was subsequently suspended and a criminal investigation commenced.

100.    During this investigation it was discovered that Lowry had, on numerous occasions, gone to the Washington Field Office's (WFO) Evidence Control Center (ECC) and took seized heroin from the evidence storage facility.

101.    After Lowry took the seized heroin, he falsified chain of custody reports.

102.    During the weeks to months that Lowry had the seized heroin in his possession, he would periodically ingest it.

103.    Before returning the remaining seized heroin to the ECC, Lowry added a cutting substance to compensate for the weight of the missing heroin.

104.    Following the addition of a cutting substance, Lowry would then reseal the heroin into a new evidence bag.

105.    After resealing the heroin Lowry had in his possession, he would then place a sticker on the new evidence bag, to signify that it was sealed.

106.    After placing the sticker on the bag, Lowry then copied the content written on the original sticker and forged the signatures/names of fellow FBI agents.

107.    Finally, Lowry would strip the original bag of its barcode sticker, and would then place it onto the new bag.

108.    During his tenure at the FBI, while addicted to heroin, Lowry participated in various undercover narcotics purchases.

109.    Lowry would keep the heroin obtained from undercover narcotics purchases in his car for weeks to months at a time.

110.    During this time, Lowry would periodically ingest the heroin.

111.    Lowry reportedly added a cutting substance to compensate for the amount missing before placing heroin obtained from undercover narcotics purchases into evidence.

112.    Lowry would then put sealing stickers on the bag which contained the heroin and would fill out all the necessary information except the seizure and sealing dates.

113.    In order to deter any culpability, Lowry would ask fellow FBI agents to sign the sealing sticker.

114.    Lowry would then record on the sticker the actual date of seizure and falsely write that the evidence was sealed on the actual date of seizure.

115.    In one instance, Lowry took part in an undercover narcotics purchase, but failed to turn over the heroin from this purchase to the ECC. Instead, Lowry ingested all of the heroin.

116.    To justify his wrongful actions, Lowry claimed that his gross misconduct was the result of an opiate addiction that manifested after he was prescribed opiate based pain medication for ulcerative colitis, a condition from which he allegedly suffered.

117.    All of Lowry's misconduct as described herein occurred during the scope of his employment as an FBI agent, including but not limited to his investigation in the Briscoe, Watson and Duren case.

118.    On March 20, 2015, Lowry was charged in the United States District Court for the District of Columbia in case number 15-cr-00034-TFH with twenty (20) counts of obstruction of justice, eighteen (18) counts of falsification of records, thirteen (13) counts of conversion of property, and thirteen (13) counts of possession of heroin.

119.    Lowry was charged with the afore-mentioned criminal acts listed herein as a result of his conduct, and tampering with substantial quantities of drug evidence while working as a special agent with the FBI, including but not limited to, during the time that Albert Briscoe, Donald Duren and Merle Watson were investigated and subsequently arrested by the Federal Bureau of Investigation.

120.    On March 31, 2015, Lowry pled guilty in United States District Court for the District of Columbia to sixty-four (64) criminal charges including twenty (20) counts of obstruction of justice, eighteen (18) counts of falsification of records, thirteen (13) counts of conversion of property, and thirteen (13) counts of possession of heroin.

121.    On July 9, 2015, Lowry was sentenced to a thirty six (36) month term of imprisonment on counts one (1) to fifty one (51) and a twelve (12) month term of imprisonment on counts fifty two (52) to sixty four (64) to run concurrently followed by twenty four (24) months of supervised release on all of the above-noted counts. The Court imposed a one hundred ($100.00)

dollar special assessment on counts one (1) to fifty one (51) and a twenty five ($25.00) dollar special assessment on count fifty two (52) to sixty four (64). The special assessment totals five thousand four hundred and twenty five ($5,425.00) dollars.

122.   As a result of Lowry's negligent conduct, Albert Briscoe, Donald Duren and Merle Watson's Fourth amendment rights were violated.

123.   As a result of Agent Lowry's negligent conduct, Albert Briscoe, Donald Duren and Merle Watson's Fifth Amendment rights were violated.

124.   As a result of agent Lowry's negligent conduct, Albert Briscoe, Donald Duren and Merle Watson's Sixth amendment rights were violated.

### COUNT I
### Negligence
**(Defendants United States of America, Department of Justice, Federal Bureau of Investigation, James Comey and Matthew Lowry)**

125.   Plaintiffs incorporate by reference paragraphs 1 through 124 as if fully set forth herein.

126.   Defendants negligently failed to track drugs which were signed out of evidence for lab testing.

127.   Defendants negligently failed to have an effective drug screening policy for Federal Bureau of Investigation agents working on illegal narcotics investigations.

128.   Defendants negligently failed to effectively monitor the chain of custody.

129.   Defendants negligently failed to have effective controls in place to verify signatures, contents, and evidence tags.

130.   Defendants negligently failed to have an effective procedure in place to maintain the integrity of the chain of custody.

131.    Based on the deficiencies cited above, the defendants acted unreasonably and negligently in their maintenance of evidence.

132.    As a result of the defendants' unreasonable and negligent failure to effectively manage evidence and the chain of custody, it was foreseeable that evidence would be stolen or be susceptible to tampering.

133.    The defendants' unreasonable and negligent failure to effectively manage evidence and the chain of custody, caused the foreseeable result of evidence being stolen or tampered with. It was foreseeable that Albert Briscoe, Donald Duren and Merle Watson's Fourth, Fifth and Sixth Amendment rights would be violated as a result of the fraudulent and tampered evidence.

134.    As federal agents, the defendants owed a duty of care to Albert Briscoe, Donald Duren and Merle Watson to afford them the rights guaranteed by the Fourth, Fifth and Sixth Amendments of the United States Constitution.

135.    The defendants breached the duty of care owed to Albert Briscoe, Donald Duren and Merle Watson by their failure to effectively handle and track evidence, which proximately caused the foreseeable result of Albert Briscoe, Donald Duren and Merle Watson being injured as a result of the violations of their Fourth, Fifth, and Sixth amendment rights.

136.    As a proximate result of the defendants failure to effectively handle and track evidence, Albert Briscoe, Donald Duren and Merle Watson were subjected to an unlawful seizure, including an unlawful seizure of their property, in violation of the Fourth Amendment, through the confiscation of "drug proceeds" from each Plaintiff, and their incarceration for twenty two (22) months. This was done without a fair trial, specifically, Albert Briscoe, Donald Duren and Merle Watson were arrested, prosecuted, convicted and sentenced based on evidence that had been tampered with and was fraudulent.

137.    As a proximate result of the defendants failure to effectively handle and track evidence, Albert Briscoe, Donald Duren and Merle Watson were not afforded and deprived of due process under the law, a right guaranteed under the Fifth Amendment, because they were arrested, prosecuted, convicted and sentenced based on evidence that had been tampered with and was fraudulent.

138.    As a proximate result of the defendants failure to effectively handle and track evidence, Albert Briscoe, Donald Duren and Merle Watson were not afforded and deprived of the right to be fully informed of the nature of the charges and evidence against them, a right guaranteed under the Sixth Amendment, as the evidence against them was fraudulent.

139.    As a proximate result of the defendants' failure to effectively handle and track evidence, Lowry was able to steal drugs from the ECC undetected for an extended period of time.

140.    Lowry's negligent conduct and the defendants failure to effectively handle and track evidence as described herein violated the plaintiffs' rights to be free from illegal seizures, arrests without probable cause and malicious prosecution as guaranteed to them by the Fourth, Fifth and Sixth Amendments to the United States Constitution and by Title 42 U.S.C. §§1983 and 1988.

141.    Lowry's negligent conduct as described herein and the defendants failure to have an effective drug screening policy for Federal Bureau of Investigation agents working on illegal narcotics cases violated the plaintiffs' rights to be free from illegal seizures, arrests without probable cause and malicious prosecution as guaranteed to them by the Fourth, Fifth and Sixth Amendments to the United States Constitution and by Title 42 U.S.C. §§1983 and 1988.

142.    Lowry had a duty to execute his duties as a Federal Bureau of Investigation agent in a reasonably careful and prudent manner.

143.    Lowry had a duty to obey all applicable Federal Bureau of Investigation policies, procedures and regulations as well as federal and state laws regarding probable cause, illegal seizures, the use of controlled substances and protecting an individual's constitutional rights.

144.    Notwithstanding the above-noted duties and in breach of those duties, Lowry failed to obey Federal Bureau of Investigation policies, procedures and regulations as well as federal and state laws when he violated the plaintiffs' rights pursuant to the Fourth, Fifth and Sixth Amendments.

145.    Lowry knew or should have known that his negligent conduct would injure the plaintiffs.

146.    At all times relevant herein, each individual defendant has a duty to protect the plaintiffs from the unconstitutional actions of other individuals, including other law enforcement officers.

147.    The proximate result of each of the defendants' breached duties caused various injuries to Albert Briscoe, Donald Duren and Merle Watson, including causing them to suffer infirmity, pain, emotional and mental distress, humiliation and anguish, and other emotional and physical injuries. Albert Briscoe, Donald Duren and Merle Watson also suffered economic loss which resulted from their lost opportunity for earnings, as well as medical costs that have resulted from medical conditions that were exasperated due to being incarcerated and receiving improper care during that incarceration. These injuries were foreseeable results of the breached duties.

148.    The proximate result of each of the defendants' breached duties caused injuries to Albert Briscoe, Donald Duren and Merle Watson and their respective family members, including but not limited to, emotional and mental distress, depression, and the exasperation of their pre-existing medical conditions because their primary caretaker was falsely arrested, detained,

20

prosecuted, convicted and sentenced to a term of imprisonment. These injuries were foreseeable results of the breached duties.

149.    The proximate cause of each of the defendants' breached duties injured Albert Briscoe, Donald Duren and Merle Watson. These injuries were foreseeable results of the breached duties.

150.    As trained and experienced law enforcement officials, the Department of Justice and the Federal Bureau of Investigation personnel as well as Director James Comey knew or should have known that the actions of Lowry as described herein, violated the plaintiffs' rights to be free from illegal seizures, an arrest without probable cause, and malicious prosecution, as guaranteed to them by the United States Constitution and by Title 42 U.S.C. §§1983 and 1988.

151.    As trained and experienced law enforcement officials employed by the United States and acting under the color of law, the Department of Justice and the Federal Bureau of Investigation personnel as well as Director James Comey had a duty to protect the plaintiffs from the unconstitutional acts of Lowry.

152.    The United States, the Department of Justice, the Federal Bureau of Investigation and Director James Comey did not seek to prevent the plaintiffs arrest and prosecution and did not do anything to prevent the plaintiffs' wrongful arrest, detention, conviction and sentence despite the fact that each of the afore-mentioned defendants knew or should have known that the plaintiffs had been wrongfully arrested, convicted and imprisoned.

153.    As a direct and proximate cause of the defendants' negligence, the plaintiffs were injured and suffered economic losses, depression, severe emotional distress, anguish and embarrassment.

154.    The defendants are liable to Albert Briscoe, Donald Duren and Merle Watson for their negligent acts.

## COUNT II
### Negligent Supervision
**(Defendants United States, Department of Justice, Federal Bureau of Investigation and Director James Comey)**

155.    Plaintiffs incorporate by reference paragraphs 1 through 154 as if fully set forth herein.

156.    Defendants knew, or should have known, about Lowry's drug addiction, and his consistent and repeated theft and tampering of evidence, based on his prior dependence on pain medication, his behavior, and demeanor. Defendants are in the business of investigating and arresting individuals involved in drug-related crimes, and if they did not have actual notice, the defendants reasonably should have known or detected that one of their agents was addicted to drugs and was stealing drugs to feed this addiction.

157.    As federal agents, the defendants owed a duty of care to Albert Briscoe, Donald Duren and Merle Watson to afford them their rights guaranteed by the Fourth, Fifth and Sixth Amendments of the United States Constitution.

158.    Defendants negligent failure to adequately supervise Lowry led to his misconduct, which breached duties owed to Albert Briscoe, Donald Duren and Merle Watson under the Fourth, Fifth, and Sixth Amendments.

159.    The defendants breached duties were the foreseeable injuries of violations of Albert Briscoe, Donald Duren and Merle Watson's constitutional rights under the Fourth, Fifth and Sixth Amendments.

160.    Defendants' failure to detect and prevent Lowry's misconduct breached a duty owed to Albert Briscoe, Donald Duren and Merle Watson as they were subject to an unlawful

seizure, including but not limited to, the unlawful seizure of their property, in violation of the Fourth Amendment, through the confiscation of "drug proceeds" and each Plaintiff was incarcerated for twenty two (22) months. This was done without a fair trial, as Albert Briscoe, Donald Duren and Merle Watson were arrested, detained, prosecuted, convicted and sentenced based on evidence that had been tampered with and was fraudulent.

161.    Defendants' failure to detect and prevent Lowry's misconduct breached a duty owed to Albert Briscoe, Donald Duren and Merle Watson as they were not afforded and deprived of due process under the law, a right guaranteed under the Fifth Amendment, because they were arrested, detained, prosecuted, convicted and sentenced based on evidence that had been tampered with and was fraudulent.

162.    Defendants' failure to detect and prevent Lowry's misconduct breached a duty owed to Albert Briscoe, Donald Duren and Merle Watson as they were not afforded the right to be fully informed of the nature of the charges and evidence against them, a right guaranteed under the Sixth Amendment, as the evidence against them was fraudulent.

163.    The defendants' breached duties triggered various injuries to Albert Briscoe, Donald Duren and Merle Watson's, including causing them to suffer infirmity, pain, emotional and mental distress, humiliation and anguish, and other emotional and physical injuries. Albert Briscoe, Donald Duren and Merle Watson also suffered economic loss which resulted from their lost opportunity for earnings, as well as medical costs that have resulted from medical conditions that were exasperated due to being incarcerated and receiving improper care during incarceration. These injuries were foreseeable results of the breached duties.

164.    The defendants' breached duties caused injuries to Albert Briscoe, Donald Duren and Merle Watson and their respective family members, including emotional and mental distress,

depression, and the exasperation of their pre-existing medical conditions because Albert Briscoe, Donald Duren and Merle Watson were arrested, detained, prosecuted, convicted and sentenced. These injuries were foreseeable results of the breached duties.

165.    The proximate result of each of the defendants' breached duties caused injuries to Albert Briscoe, Donald Duren and Merle Watson. These injuries were foreseeable results of the breached duties.

166.    At all times relevant herein, each individual defendant had a duty to properly supervise and monitor its agents including Lowry protect the plaintiffs from the unconstitutional actions of other individuals, including other law enforcement officers.

167.    As trained and experienced law enforcement officials, the Department of Justice and the Federal Bureau of Investigation personnel as well as Director James Comey knew or should have known that absent proper supervision and monitoring Federal Bureau of Investigation agents' conduct such as Lowry's conduct would expose individuals including the plaintiffs to illegal seizures, arrests without probable cause, malicious prosecution and violations of rights guaranteed by the United States Constitution and by Title 42 U.S.C. §§1983 and 1988.

168.    As trained and experienced law enforcement officials employed by the United States and acting under the color of law, the Department of Justice and the Federal Bureau of Investigation personnel as well as Director James Comey had a duty to properly supervise and monitor its agents including Lowry to protect the plaintiffs from unconstitutional acts.

169.    The United States, the Department of Justice, the Federal Bureau of Investigation and Director James Comey breached their duty by failing to properly supervise and monitor Lowry to prevent the plaintiffs arrest and prosecution and did have the proper protocol in place to prevent the plaintiffs' wrongful arrest, detention, conviction and sentence despite the fact that each of the

afore-mentioned defendants knew or should have known that the plaintiffs had been wrongfully arrested, convicted and imprisoned.

170.     As a direct and proximate cause of the defendants' negligent training, the plaintiffs were injured and suffered economic losses, depression, severe emotional distress, anguish and embarrassment.

171.     The defendants are liable to Albert Briscoe, Donald Duren and Merle Watson for their negligent supervision and their failure to adequately supervise and monitor Lowry.

**COUNT III**
**False Imprisonment**
**(Defendants United States, Department of Justice, Federal Bureau of Investigation,**
**Director James Comey and Matthew Lowry)**

172.     Plaintiffs incorporate by reference paragraphs 1 through 171 as if fully set forth herein.

173.     Defendants violated Albert Briscoe, Donald Duren and Merle Watson's personal liberty by confining them against their will in a federal penitentiary for a period of twenty two (22) months. This confinement was a product of the fraudulent tampering of evidence by Lowry, which led to the unlawful detention of Albert Briscoe, Donald Duren and Merle Watson.

174.     At all times relevant herein, each individual defendant had a duty to protect the plaintiffs from the unconstitutional actions of other individuals, including other law enforcement officers.

175.     As a proximate cause of this conduct, Albert Briscoe, Donald Duren and Merle Watson have suffered, and continue to suffer, infirmity, pain, emotional and mental distress, humiliation and anguish, and other emotional and physical injuries.

176.     Albert Briscoe, Donald Duren and Merle Watson also suffered economic loss which resulted from their lost opportunity for earnings, as well as medical costs that have resulted

from medical conditions that were worsened due to being incarcerated and receiving improper care during incarceration.

177.     As a proximate cause of this conduct, Albert Briscoe, Donald Duren and Merle Watson and their family members were injured through emotional and mental distress, depression, and the exasperation of their pre-existing medical conditions due to their primary caretaker being incarcerated.

178.     As a direct and proximate cause of the plaintiffs' false imprisonment, the plaintiffs were injured and suffered economic losses, depression, severe emotional distress, anguish and embarrassment.

179.     The defendants are liable to Albert Briscoe, Donald Duren and Merle Watson for their false imprisonment due to Lowry's misconduct.

## COUNT IV
### Negligent Infliction of Emotional Distress
**(Defendants United States, Department of Justice, Federal Bureau of Investigation, Director James Comey and Matthew Lowry)**

180.     Plaintiffs incorporate by reference paragraphs 1 through 179 as if fully set forth herein.

181.     Defendants engaged in conduct as described herein that created an unreasonable risk of exposing Albert Briscoe, Donald Duren and Merle Watson to bodily injury and emotional distress.

182.     As a result of the defendants' conduct as described herein, Albert Briscoe, Donald Duren and Merle Watson were subjected to incarceration in a federal penitentiary for a period of twenty two (22) months.

183.     As a result of the defendants' conduct as described herein, Albert Briscoe, Donald Duren and Merle Watson suffered psychological and emotional trauma and distress.

184.    As a result of the defendants' conduct as described herein, Albert Briscoe continues to suffer from severe depression.

185.    As a result of the defendants' conduct as described herein, Donald Duren continues to suffer from stress, anxiety and depression, including but not limited to, to loss of his father two (2) months after he was arrested and because he was not able to attend his father's funeral.

186.    As a result of the defendants' conduct as described herein, Merle Watson suffers from, and is taking medication for, stress and anxiety.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff Albert Briscoe demands judgment against all defendants as follows:

I.      Re-pleads and re-alleges paragraphs 1 through 186 with the same force and effect as if fully set forth herein;

II.     Subject to further discovery, reserve the right to amend the complaint:

III.    That actual damages be awarded to plaintiff Albert Briscoe against all defendants;

IV.     That compensatory damages in the amount of $5,000,000.00 be awarded to plaintiff Albert Briscoe against all defendants;

V.      Attorney's fees and costs be awarded to plaintiff Albert Briscoe;

VI.     Prejudgment interest be awarded to plaintiff Albert Briscoe; and

VII.    All other relief this Court deems just and proper under the circumstances.

WHEREFORE, plaintiff Merle Watson demands judgment against all defendants as follows:

I.      Re-pleads and re-alleges paragraphs 1 through 186 with the same force and effect as if fully set forth herein;

II.      Subject to further discovery, reserve the right to amend the complaint:

III.     That actual damages be awarded to plaintiff Merle Watson against all defendants;

IV.      That compensatory damages in the amount of $5,000,000.00 be awarded to plaintiff Merle Watson against all defendants;

V.       Attorney's fees and costs be awarded to plaintiff Merle Watson;

VI.      Prejudgment interest be awarded to plaintiff Merle Watson; and

VII.     All other relief this Court deems just and proper under the circumstances.

WHEREFORE, plaintiff Donald Duren demands judgment against all defendants as follows:

I.       Re-pleads and re-alleges paragraphs 1 through 186 with the same force and effect as if fully set forth herein;

II.      Subject to further discovery, reserve the right to amend the complaint:

III.     That actual damages be awarded to plaintiff Donald Duren against all defendants;

IV.      That Compensatory damages in the amount of $5,000,000.00 be awarded to plaintiff Donald Duren against all defendants;

V.       Attorney's fees and costs be awarded to plaintiff Donald Duren;

VI.      Prejudgment interest be awarded to plaintiff Donald Duren; and

VII.     All other relief this Court deems just and proper under the circumstances.

Albert Briscoe
Donald Duren
Merle Watson
By Counsel

Respectfully submitted,

*/s/Billy L. Ponds*
Billy L. Ponds
Counsel for the Plaintiffs
The Ponds Law Firm
Bar Number 379883
1250 24th Street, N.W.
Suite 300
Washington, D.C. 20037
Telephone Number: (202) 333-2922
E-Mail: plfpc@aol.com

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| **ALBERT MARCELLUS BRISCOE, et.al.** | : |
| | : |
| | : |
| | : **Civil Action Number: _____** |
| **Plaintiffs** | : |
| | : |
| **v.** | : |
| | : |
| **THE UNITED STATES OF AMERICA, et.al.** | : |
| | : |
| | : |
| **Defendants.** | : |

======================================

**JURY DEMAND**

The plaintiffs hereby request a jury trial on all triable issues, including the amount of damages to be awarded.

Albert Briscoe
Donald Duren
Merle Watson
By Counsel

Respectfully submitted,
*/s/Billy L. Ponds*
Billy L. Ponds
Counsel for the Plaintiffs
The Ponds Law Firm
Bar Number 379883
1250 24th Street, N.W.
Suite 300
Washington, D.C. 20037
Telephone Number: (202) 333-2922
E-Mail: plfpc@aol.com