# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

```
_____
                                        )
ALBERT MARCELLUS BRISCOE, et al.        )
                                        )
            Plaintiffs,                 )
                                        )
      v.                                )        Civil Action No. 16-cv-0809 (ABJ)
                                        )
UNITED STATES OF AMERICA, et al.        )
                                        )
            Defendants.                 )
_____)
```

## MEMORANDUM OPINION

This case arises out of unfortunate and undisputed circumstances that for a period of time, a Special Agent of the FBI was fueling his own heroin addiction with evidence seized in federal criminal investigations. A group of individuals convicted of conspiracies he helped investigate, Albert Marcellus Briscoe, Merle Watson, and Donald Duren, have brought an action against defendants United States of America ("United States"), the Federal Bureau of Investigation ("FBI"), the United States Department of Justice ("DOJ"), Andrew McCabe in his official capacity as the Acting Director of the FBI,[1] and former FBI Special Agent Matthew Lowry in both his official capacity with the FBI and in his individual capacity. The complaint includes claims of negligence (Count I), false imprisonment (Count III), and negligent infliction of emotional distress (Count IV) against all defendants, and a claim of negligent supervision (Count II) against all defendants except defendant Lowry.

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the United States has moved to dismiss plaintiffs' complaint against the agencies and the individual defendants sued in their

---

[1] Plaintiffs' complaint named former FBI Director James Comey. Am Compl. [Dkt. # 4]. Pursuant to Federal Rule of Civil Procedure 25(d), the Court automatically substitutes his successor as defendant.

official capacity for lack of subject matter jurisdiction, stating that the United States is the only proper defendant in a case brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671–80.  Def. United States & Agency Defs.' Mot. to Dismiss [Dkt. # 16] ("United States Mot."); Mem. in Supp. of United States Mot. [Dkt. # 16] ("United States Mem.") at 4.  The United States has also moved to dismiss Count II, negligent supervision, for lack of subject matter jurisdiction on the grounds that the discretionary function exception to the FTCA applies.  United States Mem. at 4.  In addition, the United States has moved to dismiss the remaining claims against it (Counts I, III, and IV) pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that plaintiffs have failed to plead plausible claims of negligence, false imprisonment, and negligent infliction of emotional distress.  *Id.* at 4–5.

Defendant Lowry has moved to dismiss the three claims against him in his official capacity pursuant to Rule 12(b)(1) since the only proper defendant in an FTCA action is the United States. Def. Lowry Mot. to Dismiss [Dkt. # 25] ("Lowry Mot."); Mem. in Supp. of Lowry Mot. [Dkt. # 25] ("Lowry Mem.") at 4.  Further, he has moved to dismiss the claims against him in his individual capacity pursuant to Rule 12(b)(6) on the grounds that plaintiffs have failed to plead plausible claims of negligence, false imprisonment, and negligent infliction of emotional distress. Lowry Mem. at 4, 25.

The Court finds that it lacks subject matter jurisdiction over the claims against the FBI, DOJ, McCabe in his official capacity, and Lowry in his official capacity, and that plaintiffs have failed to state a claim upon which relief can be granted for the remaining three alleged tort claims against the United States (Counts I, III, and IV).  Because plaintiffs are entitled to jurisdictional discovery to determine whether the discretionary function exception under the FTCA applies, the Court cannot yet determine if it has subject matter jurisdiction over plaintiffs' negligent

supervision claim against the United States (Count II).  So, it would be premature for the Court to rule on the merits of that claim.  It would also be premature for the Court to rule on plaintiffs' claims against Lowry in his individual capacity since the Court would only have supplemental jurisdiction over those claims if plaintiffs' claim for negligent supervision against the United States survives.

Accordingly, the Court will grant the motions to dismiss as to all counts against the FBI, DOJ, McCabe in his official capacity, and Lowry in his official capacity because the United States is the only proper defendant in a suit under the FTCA, and the Court will grant the government's motion to dismiss Counts I, III, and IV against the United States for failure to state a claim under Rule 12(b)(6).  The Court will deny the government's motion to dismiss Count II without prejudice and will grant plaintiffs' request for limited jurisdictional discovery concerning the existence of any relevant internal FBI policies.  The Court finds that it lacks federal subject-matter jurisdiction over plaintiffs' claims for negligence, false imprisonment, and negligent infliction of emotional distress against Lowry in his individual capacity, but it will defer making a determination about whether it should exercise supplemental jurisdiction over the state tort claims until it has ruled on the challenges to the remaining claim (Count II) against the United States.

## BACKGROUND

In December 2012, plaintiffs were indicted and arrested for their alleged roles in conspiracies to distribute heroin.  Am. Compl. ¶¶ 18–19, 43–44, 80–82.  Each plaintiff was detained pending trial, *id.* ¶¶ 20, 45, 81, and each pled guilty to conspiracy to distribute, and to possess with intent to distribute, heroin.  *Id.* ¶ 23 (Briscoe pled guilty on June 12, 2013); *id.* ¶ 48 (Watson pled guilty on May 31, 2013); *id.* ¶ 85 (Duren pled guilty on September 10, 2013). Plaintiff Briscoe was sentenced to twenty-seven months in prison, plaintiff Watson was sentenced

to sixty months in prison, and plaintiff Duren was sentenced to forty-one months in prison. *Id.* ¶¶ 26, 51, 88. As part of his guilty plea, each plaintiff affirmed that he had participated in a drug distribution conspiracy and that he was "pleading guilty because [he was] in fact guilty." Ex. 1 to Lowry Mot. [Dkt. # 25-2] ("Briscoe Plea") at 9; Ex. 2 to Lowry Mot. [Dkt. # 25-3] ("Duren Plea") at 9; Ex. 3 to Lowry Mot. [Dkt. # 25-4] ("Watson Plea") at 9.[2]

In October 2014, the government informed the district court "that one of the special agents who assisted in the investigation of [plaintiffs' cases] may have engaged in misconduct by tampering with evidence, including narcotics evidence, seized during investigations in which that agent participated." *See* Notice of Filing [No. 1:12-cr-270, Dkt. # 190] ("Duren Notice"); Notice of Filing [No. 1:12-cr-271, Dkt. # 239] ("Watson Notice"); Notice of Filing [No. 1:12-cr-271, Dkt. # 238] ("Briscoe Notice").[3] Specifically, Lowry took heroin – either directly from purchases made in undercover operations or from seized evidence stored in the Washington Field Office's Evidence Control Center ("ECC") – and appropriated it for his own use. Am. Compl. ¶¶ 105–20. He replaced the heroin with a cutting substance and falsified chain of custody reports when returning the remaining seized heroin to the ECC. *Id.* Lowry kept the heroin in his possession for weeks to months at a time and on at least one occasion, ingested all of the heroin purchased in an undercover narcotics operation instead of returning it to the ECC. *Id.* ¶¶ 114, 120. As a result of this wrongdoing, Lowry was charged with, and pled guilty to, multiple counts of obstruction of justice, falsification of records, conversion of property, and possession of heroin. *Id.* ¶¶ 124–25.

---

2        The Court may consider plaintiffs' signed guilty pleas that are "incorporated in the complaint." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); Am. Compl. ¶¶ 23, 48, 85.

3        The Court may take judicial notice of public records from other proceedings. *See Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1228 (D.C. Cir. 1993) (observing that courts may take judicial notice "of facts on the public record").

On July 9, 2015, Lowry was sentenced to a thirty-six month term of imprisonment to be served concurrently with a twelve-month term, followed by a twenty-four month period of supervised release. *Id.* ¶ 126.

On November 5, 2014, the government moved to dismiss the indictments against Watson, Briscoe, and Duren, and consented to their oral motions to withdraw their guilty pleas and vacate their sentences. Government's Notice of Consent to Defs.' Oral Mots. & Mot. to Dismiss Indictment [No. 1:12-cr-270, Dkt. # 187] ("Gov't Notice"); Gov't Notice [No. 1:12-cr-271, Dkt. # 233]. The district court vacated plaintiffs' convictions on November 6, 2014. Order [No. 1:12-cr-270, Dkt. # 193]; Order [No. 1:12-cr-271, Dkt. # 243].

In April 2015, each plaintiff filed an administrative claim with the FBI. Am. Compl. ¶ 3. The FBI denied the claims in October 2015. *Id.* Plaintiffs initiated this action on April 29, 2016, Compl. [Dkt. #1], and filed an amended complaint on June 8, 2016. Am. Compl. Plaintiffs allege that the evidence against them was "fraudulent," *see, e.g.*, *id.* ¶ 22, that they were "wrongfully incarcerated," *id.* ¶¶ 34, 59, 96, and that as a result of their incarceration, they experienced a number of physical, emotional, and economic consequences, including "significant[] deteriorat[ion]" in their physical and mental health, an inability to care for ailing family members, and lost employment. *Id.* ¶¶ 34–42, 59–79, 96–102.

On August 8, 2016, the United States moved to dismiss the complaint against the agency defendants and individuals in their official capacities pursuant to Rule 12(b)(1) and Rule 12(b)(6). United States Mot. Plaintiffs opposed the motion on October 31, 2016, Pls.' Opp. to United States Mot. [Dkt. # 18] ("Pls.' Opp. to United States Mot."), and the United States filed its reply on December 1, 2016. Reply Mem. in Supp. of United States Mot. [Dkt. # 20] ("United States Reply"). On February 9, 2017, Lowry moved separately to dismiss the complaint pursuant to Rule

12(b)(1) and Rule 12(b)(6).  Lowry Mot.  Plaintiffs opposed the motion on February 23, 2017, Pls.' Opp. to Lowry Mot. [Dkt. # 26] ("Pls.' Opp. to Lowry Mot."), and Lowry filed his reply on March 2, 2017.  Def. Lowry Reply to Pl.'s Resp. to Mot. to Dismiss [Dkt. # 27] ("Lowry Reply").

**STANDARD OF REVIEW**

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).  Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

**I.  Subject Matter Jurisdiction**

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).  Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").  "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'"  *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

6

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the Court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## II.    Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555,

and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

## I.    The Court lacks subject matter jurisdiction over the claims against the agencies and individual agency defendants in their official capacities.[4]

Generally, "the doctrine of sovereign immunity shields the federal government [and its agencies] from suit." *Tri-State Hosp. Supply Corp. v. United States* 341 F.3d 571, 575 (D.C. Cir. 2003), citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Under this doctrine, the Court's jurisdiction is limited to those instances in which the government has "unequivocally" waived sovereign immunity. *Id.*, citing *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999). "The

---

4    Plaintiffs are required to exhaust administrative remedies prior to bringing an action under the FTCA. 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 111–13 (1993). Plaintiffs have done so here. Am. Compl. ¶ 3.

FTCA 'grants federal district courts jurisdiction over claims arising from certain torts committed by federal employees in the scope of their employment, and waives the government's sovereign immunity from such claims.'" *Jerome Stevens Pharms.*, 402 F.3d at 1252, quoting *Sloan v. Dep't of Housing & Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001). But the waiver covers only claims for money damages against the United States. 28 U.S.C. § 1346(b)(1).

The remedy against the United States provided by section 1346(b) is "exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim." 28 U.S.C. § 2679(b). Similarly, the remedy against the United States provided by section 1346(b) is exclusive of remedies against federal agencies for the same action. 28 U.S.C. § 2679(a). So the United States is the only proper defendant in an action under the FTCA. *Majano v. United States*, 469 F.3d 138, 139 (D.C. Cir. 2006).

Further, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" of which the named officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). It is "*not* a suit against the official personally." *Id.* (emphasis in original); *see also Harbury v. Hayden*, 522 F.3d 413, 416 (D.C. Cir. 2008) ("[T]he FTCA does not create a statutory cause of action against individual government employees.").

Here, plaintiffs initially proposed to bring tort claims under the FTCA against McCabe and Lowry in their official capacities, as well as against the FBI and DOJ. Am. Compl. ¶¶ 12–17. Plaintiffs' claims against McCabe and Lowry in their official capacities are actions against their agency, the FBI. *See Graham*, 473 U.S. at 166. And, plaintiffs' claims against the federal agencies are not cognizable under the FTCA. Therefore, the Court will grant the motions to dismiss the

claims against the FBI, DOJ, McCabe in his official capacity, and Lowry in his official capacity for lack of subject matter jurisdiction.[5]

## II.    The Court will deny the United States' motion to dismiss Count II without prejudice pending limited jurisdictional discovery to determine the applicability of the discretionary function exception.

The United States contends that the Court lacks subject matter jurisdiction over the negligent supervision claim in Count II because it is immune from suit under the discretionary function exception to the FTCA. United States Mem. at 4, 8–10. Plaintiffs maintain that limited jurisdictional discovery concerning FBI internal directives regarding the supervision of defendant Lowry is necessary before the Court can determine whether the exception applies. Pls.' Opp. to United States Mem. at 1, 7. The Court will deny defendant's motion to dismiss Count II without prejudice, and will order limited jurisdictional discovery.

The grant of jurisdiction and waiver of sovereign immunity under the FTCA are subject to several exceptions, including the discretionary function exception. *Jerome Sevens Pharms.*, 402 F.3d at 1252. "The discretionary function exception bars claims 'based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'" *Id.*, quoting 28 U.S.C. § 2680(a). "[T]he purpose of the exception is to prevent judicial

---

5    Plaintiffs appear to agree with defendants' position that the agencies and individuals sued in their official capacities are not proper defendants because on June 8, 2017, plaintiffs filed a motion for leave to file an amended complaint seeking to "substitute[] the United States for the agency defendants." Pls.' Mot. for Leave to File a Second Am. Compl. [Dkt. # 30] ("Pls.' Mot. to Amend Compl.") at 1. The United States and agency defendants opposed plaintiff's motion, contending that substituting the United States through an amended complaint is not the appropriate mechanism to employ and that the improper claims should simply be dismissed. *See* United States & Agency Defs.' Opp. to Pls.' Mot. to Amend Compl. [Dkt. # 31] at 2–3. Because the Court will dismiss the claims against the agencies and McCabe and Lowry in their official capacities, plaintiffs' motion for leave to file an amended complaint will be denied as moot.

second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Gaubert*, 499 U.S. 315, 323 (1991), quoting *U.S. v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984) (internal quotation marks omitted).

The Court must engage in a two-part inquiry to determine whether the discretionary function exception applies. Under the first prong, the Court must assess whether the challenged conduct involves "an element of judgment or choice." *Gaubert*, 499 U.S. at 322, quoting *Berkovitz ex rel Berkovitz v. United States*, 486 U.S. 531, 536 (1988). An action is not subject to judgment or choice "if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow because the employee has no rightful option but to adhere to the directive." *Gaubert*, 499 U.S. at 322 (internal quotations omitted). Internal guidelines can also constitute this sort of mandatory directive. *Ignativev v. United States*, 238 F.3d 464, 467 (D.C. Cir. 2001) (granting jurisdictional discovery concerning internal governmental guidelines).

The second prong of the discretionary function exception asks whether the challenged acts are "of the kind that the discretionary function exception was designed to shield" – that is, "actions and decisions based on considerations of public policy." *Berkovitz*, 486 U.S. at 536–37. It is well settled that supervision of employees satisfies the second prong of the discretionary function inquiry. *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997) ("[S]upervision decisions involve a complex balancing of budgetary considerations, employee privacy rights, and the need to ensure public safety."); *see also Macharia v. United States*, 334 F.3d 61, 66–68 (D.C. Cir. 2003) (finding that decisions regarding the training of guards and embassy employees, and the amount of security-related guidance that should be provided, entail the balancing of competing demands and therefore fall under the discretionary function exception).

Accordingly, courts in this district have held that the supervision of law enforcement officers "is exactly the kind of discretionary function that is not subject to judicial second-guessing." *Bostic v. U.S. Capitol Police*, 644 F. Supp. 2d 106, 110 (D.D.C. 2009); *see also Tookes v. United States*, 811 F. Supp. 2d 322, 330–31 (D.D.C. 2011) (finding supervision of deputy marshals fell under discretionary function exception); *Bragdon v. United States*, 537 F. Supp. 2d 157, 160–61 (D.D.C. 2008) (concluding that the supervision of FBI agents fell within the scope of the discretionary function exception). If the discretionary function exception applies, "the court lacks subject-matter jurisdiction to hear the plaintiff's claims." *Loumiet v. United States*, 828 F.3d 935, 941 (D.C. Cir. 2016).

Plaintiffs do not dispute that the FBI's supervision of its employees satisfies the second prong of the discretionary function exception test. *See generally* Pls.' Opp. to United States Mot. But they argue that the facts do not support a finding that the conduct is discretionary under the first prong of the test because: (1) the FBI and its agents exceeded the scope of their constitutional authority; and (2) the FBI and its agents violated a federal statute, regulation or policy specifically prescribing the management and supervision of FBI agents. *Id.* at 7.

A.    **Plaintiffs have failed to allege that FBI agents exceeded their constitutional authority in supervising Lowry.**

Plaintiffs contend that the discretionary function exception does not apply to the FBI's supervision of defendant Lowry because "this supervision constituted unconstitutional conduct that violated mandates under the Fourth, Fifth, and Sixth amendments of the United States

Constitution, and therefore constitutes a constitutionally defective exercise of discretion."[6]  Pls.'
Opp. to United States Mem. at 8.  However, plaintiffs have failed to plausibly allege that the
alleged negligent supervision of Lowry itself constituted a constitutional violation.

The D.C. Circuit recently held in *Loumiet* that the "FTCA's discretionary-function
exception does not provide a blanket immunity against tortious conduct that a plaintiff plausibly
alleges also flouts a constitutional prescription."  *Loumiet*, 828 F.3d at 943 (noting that at least
seven other circuits "have either held or stated in dictum that the discretionary-function exception
does not shield government officials from FTCA liability when they exceed the scope of their
constitutional authority").  In remanding the case, the court instructed the district court to
"determine in the first instance whether [plaintiff's] complaint plausibly alleges that the
[defendant's] conduct exceeded the scope of its constitutional authority so as to vitiate
discretionary-function immunity."  *Id.* at 946.

Plaintiffs argue that the FBI's negligent supervision of Lowry violated the Constitution,
and they point to the First Circuit opinion in *Limone v. United States*, 579 F.3d 79 (1st Cir. 2009).
Pls.' Opp. to United States Mot. at 9.  The *Limone* case involved an intentional infliction of
emotional distress claim, not a negligent supervision claim, *id.* at 101, and the court found that the
agents' conduct of "fram[ing] the scapegoats for a capital crime and covering up the frame job by
withholding exculpatory information from state officials," *id.*, was "unconstitutional and,
therefore, not within the sweep of the discretionary function exception."  *Id.* at 102.  The First

---

6    Despite invoking 42 U.S.C. § 1983, Am. Compl. ¶ 172, – which applies only to individuals
acting under the color of state law and would not apply to a federal agent – and repeatedly alleging
violations of plaintiffs' constitutional rights, plaintiffs make it clear that they "are not alleging
constitutional torts or attempting to recover under a constitutional-based harm."  Pls.' Opp. to
United States Mot. at 12.  So, the allegations of constitutional violations are only relevant to the
applicability of the discretionary function exception.

Circuit emphasized that "the discretionary function exception requires that an inquiring court focus on the specific conduct at issue" because it is "the particular conduct giving rise to the claims at issue" that must violate the Constitution. *Id.* at 101. The court then concluded that it was the agents' conduct itself that violated plaintiffs' constitutional rights. *Id.* at 102.

Here, plaintiffs allege that the FBI's "negligent failure to adequately supervise Lowry led to *his* misconduct, which breached duties owed to [plaintiffs] under" the Constitution. Am. Compl. ¶¶ 163, 165–69 (emphasis added). Plaintiffs claim that "each individual defendant had a duty to properly supervise and monitor its agents including Lowry [to] protect the plaintiffs from the unconstitutional actions of other individuals, including other law enforcement officers." *Id.* ¶ 171; *see also id.* ¶ 156 ("[The FBI] had a duty to protect the plaintiffs from the unconstitutional acts of Lowry."). But plaintiffs do not allege that the FBI's supervision itself was unconstitutional. So, even if plaintiffs plausibly allege that Lowry's actions violated their constitutional rights, they fail to allege constitutional violations by his supervisors.

Plaintiffs posit in opposition to the motion to dismiss that Lowry's supervisors should have been on notice of Lowry's misconduct, and that because they failed to act, they violated plaintiffs' constitutional rights. Pls.' Opp. to United States Mot. at 10 ("The plaintiffs have alleged that defendants knew of Lowry's drug addiction and tampering of evidence, or should have known, especially given the fact that the defendants are in the business of investigating and arresting individuals involved in drug-related crimes."), citing Am. Compl. ¶ 161; *id.* at 16 n.1 ("[I]t is entirely plausible that the defendants were aware of the fraudulent nature of the drug evidence prior to obtaining a grand jury indictment and the subsequent guilty pleas, but failed to timely disclose this information."). However, plaintiffs fail to allege any facts to support these

suppositions, and the Court need not draw an inference that defendants knew of Lowry's misconduct on the basis of conclusory or speculative allegations.  *See Kowal*, 16 F.3d at 1276.[7]

Because plaintiffs fail to allege a single supervisory action that itself violated plaintiffs' constitutional rights, plaintiffs have failed to demonstrate a constitutional defect in the exercise of supervisory discretion that would vitiate the discretionary function exception.

### B.    The Court will grant plaintiffs' request for jurisdictional discovery.

Plaintiffs argue in the alternative that they should be granted "limited jurisdictional discovery in order to determine: 1) if any regulations, policies or procedures within the FBI applied to the supervision of Lowry and other special agents working with him; and 2) if such internal regulations, policies, procedures or guidelines were not followed."  Pls.' Opp. to United States Mot. at 13.  While plaintiffs do not appear to have any specific grounds to claim that these circumstances apply, the standard for permitting jurisdictional discovery in this Circuit is quite liberal.  Therefore, the Court finds that it would be premature to resolve the first prong of the discretionary function exception test without giving plaintiffs the opportunity to conduct limited jurisdictional discovery.

The D.C. Circuit has stated that plaintiffs must "be given an opportunity for discovery of facts necessary to establish jurisdiction prior to decision of a 12(b)(1) motion."  *Ignatiev*, 238 F.3d at 467; *see also Loughlin v. United States* 393 F.3d 155, 167 (D.C. Cir. 2004) (affirming this standard).  Specifically in the context of the FTCA, the D.C. Circuit has approved the use of

---

7    Moreover, plaintiffs' suggestions about what might be "plausible" are undermined by allegations that (1) Lowry actively concealed his conduct from his supervisors by falsifying documents and adding a cutting substance to compensate for the stolen heroin, Am. Compl. ¶¶ 106, 107, (2) the FBI voluntarily informed the United States Attorney's office of Lowry's misconduct after learning that the evidence had been tampered with, *id.* ¶ 103, and (3) Lowry was prosecuted for his wrongdoing. *Id.* ¶¶ 123–26.

jurisdictional discovery where plaintiffs have challenged the application of the discretionary function exception. *See, e.g.*, *Ignatiev*, 238 F.3d at 467 (reversing the district court's decision to decline to permit discovery regarding whether mandatory internal guidelines existed); *Loughlin*, 393 F.3d at 166–68 (affirming district court's decision to grant jurisdictional discovery regarding the existence of binding directives). However, the district court retains control over devising the limits of jurisdictional discovery. *Phx. Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000).

In *Ignatiev*, the D.C. Circuit reversed the district court's denial of limited jurisdictional discovery to plaintiffs who alleged in their complaint that Secret Service agents had negligently failed to protect the Bulgarian Chancery. 238 F.3d at 465, 467. Although the court recognized that this sort of allegation was "at the shorter and plainer end of the descriptive continuum," additional allegations of the existence and violation of mandatory internal policies would have been inappropriate if plaintiffs did not actually know whether those policies existed or not. *Id.* at 466–67. The court observed that plaintiffs were "caught between their ethical obligations under [Federal Rule of Civil Procedure] 11 and the demands of the FTCA." *Id*. at 466. Later, in response to the motion to dismiss, plaintiffs asserted that the Secret Service "likely had internal objectives or policies" that would have eliminated the applicability of the discretionary function exception. *Id.* at 466. Despite the summary nature of the complaint, and the speculative nature of that assertion, the court granted limited jurisdictional discovery because "[w]hat [was] missing from the complaint [was] not a statement of the relevant facts – that the Secret Service failed to protect the Bulgarian Chancery – but a reference to applicable internal guidelines that rendered some protective actions nondiscretionary." *Id.* at 465, 467.

Here, plaintiffs' allegations with respect to the failure to supervise Lowry are summary and scarce, but plaintiffs do claim that "defendants negligent[ly] fail[ed] to adequately supervise Lowry;" defendants failed to "detect and prevent" Lowry's misconduct; and that "each individual defendant had a duty to properly supervise and monitor its agents including Lowry."  Am. Compl. ¶¶ 163, 165–67, 171.  Plaintiffs do not refer to any internal FBI policies that may have dictated defendants' supervision of Lowry, and the United States contends that such an omission is fatal.  United States Reply at 7.  But plaintiffs' failure to allege the existence of an internal policy is not dispositive at this early stage.  As in *Ignatiev*, what is missing from the complaint is not a statement of the relevant facts – that the FBI failed to supervise Lowry while he was illegally mishandling evidence – but a reference to applicable internal guidelines that would have rendered some of defendants' supervisory actions nondiscretionary.  *See* 238 F. 3d at 467.  And the D.C. Circuit has granted jurisdictional discovery in exactly this situation.  *See id.*

Therefore, the Court will deny the United States' motion to dismiss Count II without prejudice, and grant plaintiffs' request for some jurisdictional discovery.  The Court is not persuaded that there is a basis in the record at this time to launch what would be a wide-ranging fishing expedition into as-yet entirely speculative claims that the FBI failed to comply with its own regulations.  So it will permit plaintiffs to propound up to three interrogatories and up to three requests for production of documents to gather information concerning the existence of mandatory directives that would have governed the Lowry situation.  Once that information has been received and reviewed, plaintiffs will have the opportunity to propose a narrowly tailored plan for further jurisdictional discovery if appropriate.

**III.    The Court may lack subject matter jurisdiction over the claims against Lowry in his individual capacity, so it will defer ruling on those claims.**

Under the FTCA, the Court would have jurisdiction over the claims against Lowry in his individual capacity if the Court found that Lowry was acting within the scope of his employment when he committed the alleged torts.  At that point, though, the Court would be required to substitute the United States for Lowry as the proper defendant.  *See* 28 U.S.C. § 1346(b); 28 U.S.C. §§ 2679(b), (d).  However, as will be discussed later in this opinion, the Court will dismiss plaintiffs' claims for negligence, false imprisonment, and negligent infliction of emotional distress against the United States under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  So, the only question the Court needs to resolve is whether it maintains jurisdiction over plaintiffs' claims against Lowry in his individual capacity if Lowry was acting outside of the scope of his employment, and the United States would not be substituted for him as a defendant.

Plaintiffs contend that even if the Court found that Lowry was acting outside of the scope of his employment, the Court would retain jurisdiction over their claims against Lowry in his individual capacity under diversity jurisdiction or supplemental jurisdiction.  Pls.' Resp. to Ct.'s Order to Show Cause [Dkt. # 28] at 2, citing 28 U.S.C. § 1332(a) and 28 U.S.C. § 1367.  But plaintiffs have failed to plead diversity jurisdiction.[8]  So the only way the Court would have

---

[8]    "Citizenship is an essential element of federal diversity jurisdiction; failing to establish citizenship is not a mere technicality.  'The party seeking the exercise of diversity jurisdiction bears the burden of pleading the citizenship of each and every party to the action.'"  *Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 906 (D.C. Cir. 2006), quoting *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 (D.C. Cir. 1983).  A plaintiff must plead the domiciles of the parties, which is determined by "physical presence in a state, and intent to remain there for an unspecified or indefinite period of time."  *Prakash v. Am. Univ.*, 727 F.2d 1174, 1180 (D.C. Cir. 1984).  Plaintiffs have failed to plead any facts relating to defendant Lowry's domicile.  *See generally* Am. Compl.  Without that information, plaintiffs cannot meet their burden of pleading citizenship.  Therefore, the Court lacks subject matter jurisdiction over plaintiffs' claims against Lowry in his individual capacity pursuant to 28 U.S.C. § 1332(a)(1).

jurisdiction over plaintiffs' claims against Lowry in his individual capacity would be by exercising supplemental jurisdiction. Since "district courts may decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if . . . the district court has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3); *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005) ("A district court may choose to retain jurisdiction over, or dismiss, pendent state law claims after federal claims are dismissed."), the Court will await the outcome of the government's motion to dismiss Count II – plaintiffs' claim of negligent supervision against the United States – before it rules on the motion to dismiss the state law claims against Lowry in his individual capacity.

**IV.    Plaintiffs have failed to plausibly allege sufficient factual allegations to support their remaining tort claims.**

For the remaining claims, the United States has waived sovereign immunity to the extent that it would be liable as a private person "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Because plaintiffs allege that "[a]ll of the acts complained of . . . occurred in the District of Columbia," Am. Compl. ¶ 5, plaintiffs must plausibly allege sufficient factual content to permit the reasonable inference that the United States is liable according to District of Columbia law. *See Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 911 (D.C. Cir. 2015) ("Tort liability under the FTCA is determined according to the law of the place where the alleged acts or omissions occurred – in this case, the District of Columbia."). The plaintiffs have failed to do so.

A.    **Plaintiffs have failed to state a claim for negligence against the United States because they have failed to plausibly allege that any alleged breach of duty proximately caused their alleged injuries.[9]**

Under District of Columbia law, "[t]o establish negligence a plaintiff must prove a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach." *Novak*, 452 F.3d at 907, quoting *District of Columbia v. Beretta, U.S.A., Corp.*, 847 A.2d 1127, 1134 n. 2 (D.C. 2004). Plaintiffs allege that "defendants breached the duty of care owed to [them] by their failure to effectively handle and track evidence, which proximately caused the foreseeable result of [plaintiffs] being injured." Am. Compl. ¶ 140. Specifically, plaintiffs claim that they "were arrested, prosecuted, convicted and sentenced based on evidence that had been tampered with and was fraudulent," *id.* ¶ 141, and that "[t]he proximate result of each of the defendants' breached duties caused various injuries . . . including causing [plaintiffs] to suffer infirmity, pain, emotional and mental distress, humiliation and anguish, and other emotional and physical injuries." *Id.* ¶ 152.

Even assuming that plaintiffs have alleged that the government defendants owed plaintiffs a duty and breached that duty, they have failed to allege that the breach of that duty proximately caused their injuries. Proximate causation is "that cause which, in natural and continual sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred." *District of Columbia v. Zukerberg*, 880 A.2d 276, 281 (D.C. 2005),

---

9    The Court may not consider whether Count II survives a 12(b)(6) motion to dismiss for failure to state a claim entitled to relief until the Court determines that it may exercise subject matter jurisdiction over that claim. *See Bell v. Hood*, 327 U.S. 678, 682 (1946). The Court notes, however, that under District of Columbia law, a negligent supervision claim is "derived from th[e] standard negligence tort" and thus would be subject to identical analysis regarding whether plaintiff had adequately alleged that a breach of a duty owed to the plaintiff was the proximate cause of the alleged injury. *See, e.g.*, *Griffin v. Acacia Live Ins. Co.*, 925 A.2d 564, 575 (D.C. 2007).

quoting *St. Paul Fire & Marine Ins. Co. v. James G. Davis Constr. Corp.*, 350 A.2d 751, 752 (D.C. 1976). An actor's conduct proximately causes harm if "his conduct is a substantial factor in bringing about the harm." *District of Columbia v. Carlson*, 793 A.2d 1285, 1288 (D.C. 2002), quoting Restatement (Second) of Torts § 431. But defendants cannot be held liable for the effects of an attenuated chain of events. *See e.g.*, *de Los Rios v. NationsBank, N.A.*, 911 F. Supp. 8, 10–11 (D.D.C. 1995) (granting motion to dismiss after finding plaintiff could not establish that defendants' alleged acts were the proximate cause of plaintiff's conviction, imprisonment, emotional distress, and loss of status because of the existence of too many intervening events).

Plaintiffs allege that they were indicted by a grand jury, *id.* ¶¶ 18, 43, 82, and ultimately pled guilty to heroin distribution and possession charges. Am. Compl. ¶¶ 23, 48, 85. As part of their guilty pleas, plaintiffs admitted to their participation in a drug trafficking conspiracy and entered those pleas "because [they were] in fact guilty." Briscoe Plea at 9; Duren Plea at 9; Watson Plea at 9. Plaintiffs allege that the substance seized in the course of the investigation was in fact "heroin," *id.* ¶¶ 105–17, and they never assert their innocence.

Aside from plaintiffs' "threadbare recitals," *see Iqbal*, 556 U.S. at 678, citing *Twombly*, 550 U.S. at 555, that defendants' conduct "proximately caused" their injuries, or that plaintiffs' injuries were the "proximate result" of defendants' conduct, *see e.g.*, Am. Compl. ¶¶ 140, 152, plaintiffs fail to allege a single fact that gives rise to the inference that defendants' "failure to effectively manage evidence and the chain of custody," *id.* ¶ 137, was a substantial factor in causing the harm they suffered. The complaint does not tie Lowry's misappropriation of seized contraband or his dilution or destruction of evidence to plaintiffs' convictions or sentencings in any way; there is no allegation that drugs that had been tampered with were entered into evidence in any proceeding. Each plaintiff's alleged injuries stems from his incarceration, *see id.* ¶¶ 34–42,

59–79, 96–102, but it was only after each plaintiff was indicted and entered a guilty plea that he was sentenced to serve a term of years in prison. *Id.* ¶¶ 26, 51, 88. At the end of the day, the government's response to Lowry's misconduct prompted plaintiffs' early release, *see id.* ¶¶ 32, 57, 94; there is no allegation in the complaint that Lowry's unlawful activity, or the agency's alleged failure to detect or prevent it, led to their incarceration.

Therefore, the Court finds that plaintiffs have failed to state a negligence claim upon which relief can be granted, and the Court will grant the government's motion to dismiss Counts I and IV pursuant to Rule 12(b)(6).[10]

**B.    Plaintiffs have failed to state a claim for false imprisonment because they fail to allege sufficient facts to support the unlawfulness of their detention.**

To state a claim for false imprisonment under District of Columbia law, a plaintiff must allege: "(1) detention or restraint against one's will within boundaries fixed by the defendant, and (2) the unlawfulness of such restraint." *Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 911–12 (D.C. Cir. 2015), quoting *Edwards v. Okie Dokie, Inc.*, 473 F. Supp. 2d 31, 44 (D.D.C. 2007). Plaintiffs have met the first element because they allege that they suffered numerous injuries as a result of "being wrongfully incarcerated," and they state that defendants "confin[ed] them against their will." *See* Am. Compl. ¶¶ 34–42, 59–79, 96–102, 178. So, the only question is whether plaintiffs have sufficiently alleged that their detention was unlawful. They have not.

Generally, a detention's lawfulness depends on whether it was supported by probable cause. *See Harris*, 776 F.3d at 912 ("The existence of probable cause for arrest defeats claims for

---

10    Because the Court finds that plaintiffs' negligence claim against the United States fails, their negligent infliction of emotional distress claim will also be dismissed. *See Hill v. Medlantic Health Care Grp.*, 933 A.2d 314, 331 (D.C. 2007) (concluding that judgment for defendant was properly granted on the negligent infliction of emotional distress claim after plaintiff could not establish that defendant was negligent).

false arrest and imprisonment."); *DeWitt v. District of Columbia*, 43 A.3d 291, 295 (D.C. 2012), ("[I]t is a familiar principle that probable cause for an arrest and detention constitutes a valid defense to a claim of false . . . imprisonment."), quoting *Magwood v. Giddings*, 672 A.2d 1083, 1086 (D.C. 1996). "[A] prior conviction, although set aside or reversed . . . is conclusive evidence of the existence of probable cause, *unless the conviction was procured by fraud, perjury or other corrupt means*." *Dewitt*, 43 A.3d at 296 (emphasis in original) (declining to treat plaintiff's conviction "as mandating a conclusion that there was probable cause for his imprisonment and prosecution" because plaintiff "alleged in his complaint that the defendants 'erroneously testified' to the grand jury and at trial about eyewitness descriptions and photo identifications, manipulated a line-up identification and witness statements, beat and intimidated a witness . . ., lost or withheld exculpatory information, and caused criminal proceedings to be instituted and continued against [plaintiff], 'even after [defendants] knew or reasonably should have known that no probable cause existed to support' the prosecution against him and his continuing detention"), quoting *Bumphus v. Smith*, 189 A.2d 130, 131–32 (D.C. 1963). Similarly, a valid indictment "conclusively determines the existence of probable cause." *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975), citing *Ex parte United States*, 287 U.S. 241, 250 (1932).

Here, plaintiffs do not argue that there was no probable cause for their arrest or pre-trial detention since Briscoe and Watson were indicted by a grand jury prior to their arrests, and plaintiff Duren was indicted two days after his arrest. *See* Pls.' Opp. to United States Mot.; United States Reply at 9; Am. Compl. ¶¶ 18–19, 43–44, 82. Also, plaintiffs do not allege that their indictments were unlawfully obtained or predicated on false testimony or evidence presented to the grand jury.

However, in their opposition, plaintiffs submit that their convictions were "procured through fraud or other corrupt means," and therefore, the judgments against them do not constitute

conclusive evidence of probable cause that would support the detention.  Pls.' Opp. to United States Mot. at 16.  But the allegations in the complaint do not support this theory.  While plaintiffs generally assert that their "confinement was a product of the fraudulent tampering of evidence by Lowry," Am. Compl. ¶ 178, they do not allege facts that would support a conclusion that their particular convictions were in any way tainted by fraud or by Lowry's wrongdoing.  There is no allegation that the drugs seized in plaintiffs' cases had actually been diluted or tampered with at the time the pleas were entered, or that the government would have been unable to produce actual heroin if any of the plaintiffs had elected to go to trial.

Plaintiffs contend that they were "induced to plead guilty to the offenses they faced due to the drug evidence that was presented . . . to them as authentic and as the evidence that tied them to an alleged conspiracy to distribute heroin."  Pls.' Opp. to United States Mot. at 15.  But each plaintiff was convicted based upon an admitted factual proffer that referenced intercepted

telephone calls and included each plaintiff's description of his own role,[11] and each plaintiff affirmed that he was pleading guilty "because [he was] in fact guilty." Briscoe Plea at 9; Duren Plea at 9; Watson Plea at 9. Since plaintiffs have failed to make any allegation that would cast doubt upon the admitted statements of fact or the manner in which the pleas were obtained, plaintiffs have failed to allege that their convictions were procured by fraud, perjury, or other corrupt means, and they have failed to allege that their detention was unlawful.

Therefore, the Court will dismiss Count III against the United States for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

## CONCLUSION

Based on the complaint and the relevant documents, and granting plaintiffs the reasonable inferences to which they are entitled at this stage, the Court will grant the motions to dismiss all

---

11      Each plaintiff agreed to a "proffer of evidence" as part of his guilty plea. Plaintiff Briscoe agreed that he "obtained quantities of heroin" from a co-conspirator, "which [he] used at times, and some he packaged and redistributed." Briscoe Plea at 13. He acknowledged that he was involved in multiple phone calls with another co-conspirator arranging drug transactions, and that on October 14, 2012, he met another co-conspirator who "supplied [him] with a quantity of heroin." *Id.* at 13–14. When law enforcement agents executed a search warrant of his residence, they recovered "a spoon and a scale with residue and approximately 13 grams of heroin." *Id.* at 15.
            Plaintiff Watson "acted as a re-distributor and tester of heroin that he purchased." Watson Plea at 15. He "was intercepted on almost a daily basis over" a co-conspirator's phone discussing drug trafficking. *Id.* at 13. Specifically on October 18, 2012, Watson discussed "the purchase of 40 grams of heroin from" another co-conspirator who "was in town and had high quality heroin," and then met that co-conspirator to make the purchase. *Id.* at 13–15. After making the purchase, FBI agents sought to conduct a traffic stop, but Watson "attempted to elude agents" and ultimately "threw the drugs out the window." *Id.* at 15. Agents recovered approximately 40 grams of a substance that field-tested positive for heroin. *Id.*
            Plaintiff Duren admitted that he "test[ed] the quality of the heroin," introduced a co-conspirator to drug customers, and sold "various quantities of heroin in the Washington, D.C. area." Duren Plea at 13. During the course of the investigation, the FBI intercepted Duren on phone calls with other co-conspirators arranging for the sale of drugs to customers. *Id.* at 13.
            These facts were sufficient to constitute the offense of conspiracy to distribute or possess with intent to distribute heroin, and no plaintiff requested that the drugs be subjected to any further analysis before he entered his plea.

counts against the FBI, DOJ, McCabe in his official capacity, and Lowry in his official capacity because the United States is the only proper defendant in a suit under the FTCA, and the Court will grant the government's motion to dismiss Counts I, III, and IV against the United States for failure to state a claim under Rule 12(b)(6).  The Court will deny the motion to dismiss Count II without prejudice and will grant plaintiffs limited jurisdictional discovery according to the terms set out in the attached order.  The Court will defer ruling on Lowry's motion to dismiss plaintiffs' state law claims for negligence, false imprisonment, and negligent infliction of emotional distress against him in his individual capacity until it has determined whether any federal claims will remain.

A separate order will issue.


AMY BERMAN JACKSON
United States District Judge


DATE:  July 25, 2017

26